THE BANK OF NOVA SCOTIA, Plaintiff and Appellee, v. JOSÉ J. BENÍTEZ, Defendant, and CARLOS CARLE DUBOIS, ETC., Defendant and Appellant.

No. 7337. Argued November 24, 1937.—Decided February 18, 1939.

*Largé, Acevedo & Lecároz* for appellant. *Brown, González & Newson* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

We have taken the stipulation of the parties of June 15, 1935, as a basis upon which to determine the facts in this case. Considering, therefore, those allegations of the complaint which were admitted and the documentary evidence presented and admitted, the record substantially shows the following:

On January 14, 1927, in the city of San Juan, Puerto Rico, there appeared before notary public Francisco González Fagundo, José J. Benítez, Miguel Ferrer in representation of his brother Gabriel widower of Teodosia Benítez Sampayo, the sisters Josefa, Carlota and Arcadia Benítez Sampayo, and Augusto Ortiz as guardian for the minor José J. Benítez Sampayo, and executed a deed entitled "extension of contract re-community of property."

They set forth as antecedents that at the death of Carlota Sampayo, wife of the first of the parties mentioned and the mother of Teodosia, Josefa, Arcadia, Carlota and José J. Benítez Sampayo, her heirs, by notarial deed of May 9, 1917, made an inventory and liquidation of the hereditary estate and agreed to leave it in an undivided state for a period of ten years, and such a term having expired and wishing to remain in such a relationship as to all the above property as well as with regard to the property acquired with money derived from such community, they stipulated the following:

To preserve in an undivided state the property of the community and to designate the latter as "José J. Benítez e Hijos."

To entrust its administration to José J. Benítez with powers, among others, of directing the agricultural development of the community property and, for such purposes, of borrowing money secured by mortgages on the realty pursuant to the execution of all necessary public or private documents authorizing him expressly "to sign on behalf of the community, joint and severally, with the 'Benítez Sugar Company' all promissory notes executed or to be executed in favor of the Bank of Nova Scotia in connection with all the advances of money made or to be made by said bank to said corporation.";

To distribute the losses or profits of the community in proportion to the interest of each co-owner, with the power in each of the children to dispose of $250 per month and in the father of $2,000; which sums were to be considered as advances upon expected profits and charged to their individual accounts to be liquidated annually;

To prepare a general balance after the liquidation of the annual harvest, each co-owner being entitled to dispose of his profits but leaving in the common fund the amount agreed upon as necessary for expenses of cultivation and development of the property, such expenses as should be incurred for cultivation, taxes, salaries and any other necessary to the better development of the business to be considered as general expenses of the community;

To acknowledge the right of each co-owner to sell his community interest in the manner specified, and the right of José J. Benítez, which he had been exercising, of occupying, free of charge, the houses belonging to the community at Santurce and Vieques.

From 1928 on, and while such community was in force, the Bank of Nova Scotia made crop loans to said community, which upon the annual liquidation always left balances in

favor of the bank and were carried by it until they amounted, on July 1, 1933, to the sum of $756,000, on which date, as the parties did not agree to execute the customary extensions, the bank took over the administration of all the properties in accordance with the agreement.

While this was happening, Carlos Carle Dubois filed suit in the District Court of San Juan against José J. Benítez to recover on a promissory note for $6,684.84 and, to secure the effectiveness of the eventual judgment, procured a notice of attachment to be entered against a lot and house located in Santurce which appeared recorded in the name of José J. Benítez, which entry was made on August 11, 1930.

A judgment entered in favor of Dubois having become final, and an order of execution having issued for the public sale of the attached property, the community "José J. Benítez e Hijos" opposed it and filed an intervention proceeding within which it obtained the suspension of the sale. A new order of execution, which was limited to the sale of the title or interest which José J. Benítez might have in the attached property, was annulled by the district court at the instance of the community. Feeling aggrieved by such annulment Dubois appealed to this Supreme Court which reversed the order appealed from and remanded the case to the lower court for further proceedings in accordance with the terms of the opinion. *Carle Dubois* v. *Benítez,* 46 P.R.R. 182.

After the record had been returned to the district court, a new order of execution was issued and there then arose this other intervention proceeding filed by the Bank of Nova Scotia in March 1934, in which an injunction *pendente lite* was first issued and, subsequently, judgment was entered in the following terms:

"For the reasons stated in our opinion which appears in the record and is made a part hereof, it is decreed that the credit of the plaintiff in this case, inasmuch as it is a credit against the community, 'José J. Benítez e Hijos,' is a preferred one and enjoys a priority with reference to the property of said community over that credit of

the defendant Carlos Carle Dubois which is established by the judgment rendered in civil case No. 12,932 of this court, because the latter was contracted by co-owner José J. Benítez in his private capacity and for his sole benefit. It is decreed that the defendant Carlos Carle Dubois has a right to an order of execution to satisfy the final judgment rendered in his favor in said civil case No. 12,932, and should the property to be sold in execution be the interest or share which the co-owner José J. Benítez has in the urban property attached in said civil case No. 12,932, belonging to the community, or in any other property belonging to said community, the edicts published announcing the public sale should state that the interest or share which is being sold in execution is that which may be adjudicated to José J. Benítez Díaz in said property, after the debts of the community of property 'José J. Benítez e Hijos' have been paid.

"The preliminary injunction granted in this case is vacated as improper, given the other pronouncements of this judgment, each party to pay its own costs."

Feeling aggrieved, Carle Dubois took the present appeal.

■ There is no doubt that the house and lot in Santurce which was attached by Carle Dubois on August 11, 1930, to satisfy the judgment which he might obtain, and eventually did obtain, for the recovery of the money personally owed to him by José J. Benítez, did not, at the moment of the attachment, belong exclusively to Benítez but to Benítez and his children who had all agreed to leave the property undivided under a common administration and to be developed pursuant to the contract of January 14, 1927.

Nothing appeared from the registry when the attachment was levied. The property was recorded in the name of José J. Benítez, married to Carlota Sampayo, but since it is admitted and true that the wife died, that the husband and children left the matrimonial property in a community state and that this state still existed at the date of the attachment, the legal issue presented should be decided with those facts in mind as well as another definite one concerning the attached parcel which was also admitted and is true, to wit,

that by a public document duly recorded, executed on August 18, 1930, that is, seven days after the notice of attachment was entered, the community José J. Benítez e Hijos, executed a promissory note for $20,000 secured by a mortgage on the house and lot in question and pledged it to the Bank of Nova Scotia as collateral for the crop loan debt which it had incurred with the bank under the circumstances already described.

What did Carle Dubois acquire by virtue of the attachment in question? He acquired the right to execute the judgment which might be rendered in his favor in the suit which he had commenced, upon the attached property of his debtor, José J. Benítez, with preference over any other creditor of the latter whose credit should be later than that of the note of attachment. *La Sociedad Española de Auxilio, etc.* v. *Rossy,* 17 P.R.R. 77; *Banco de Puerto Rico* v. *Solá e Hijos et al.,* 26 P.R.R. 57.

What did the attached property consist of? In our opinion it consisted of an undivided common interest in a piece of property which with others formed part of a contractual community.

Prior to the attachment of Carle Dubois, his debtor, José J. Benítez, of his own free will had disposed of his common interest in the attached property and had made it form part of a community of property consisting of a going business, the development of which should be continued in accordance with the agreements we have mentioned and which were unanimously adopted by all parties in interest.

The rural properties of the community were to be cultivated as before, and, for such a purpose, the administrator was authorized to contract loans and did contract them with the Bank of Nova Scotia before and after the attachment.

At the date when this suit was commenced, since the owners in common had not been able to agree upon the extension of the community, the Bank of Nova Scotia, as cred-

itor of the community for a heavy sum of money, had taken over the administration of its property.

 Which credit has preference? That of Carle Dubois which was contracted with José J. Benítez individually and secured since August 11, 1930, by a recorded attachment of property which his debtor had already made a part of the community mentioned, or that of the Bank of Nova Scotia contracted by the community at a time prior to the entry of the notice of attachment, at first generally and subsequently secured in a special manner by the mortgage note pledged to the bank? In our opinion the preference is with the bank.

The law authorizes the establishment of a community of property and provides that in the absence of contracts or special provisions, said community shall be governed by what is prescribed in the Civil Code. Section 326 of said Code (1930 ed.).

In this case there was a contract. Its terms prevail and their examination indeed discloses the formation of a community broader than the ordinary one in its scope. It is not limited to the administration of a piece of realty in possession of the community, as for example a house, but goes further and comprises the administration of important agricultural properties in full production in connection with a sugar corporation. Nevertheless, it cannot be said therefore that something was created which was in violation of law, or without capacity to contract valid obligations.

The debt to the plaintiff bank, which we have just recognized as preferential in nature, was for the community in general, that is, for the cultivation of the farms which generated the product to be subsequently divided among the members. It is therefore a community debt, not only because such a conclusion is imperative but also because it is provided for in the contract of January 14, 1927.

That this may be so without distorting the purposes and scope of the community regulated by the Civil Code, although

we admit that this is an extreme case going almost to the borderline of that institution, may be seen from the provisions of Sections 328 and 333 of said code (1930 ed.), the last of which, as amended by Act No. 15 of 1916 (Laws, p. 47) reads as follows:

"Each one of the part-owners shall have the absolute ownership of his part and that of the fruits and profits belonging thereto, and he may, therefore, sell, assign or mortgage the same, and even substitute another person in the enjoyment thereof, or lease such part, unless personal rights are involved. But the effect of the alienation or mortgage in relation to the part-owners shall be limited to the share which may be alloted to them in the division upon the termination of the common ownership, and the effect of the lease shall be to confer on the lessee during the term of the contract, the powers of the part-owner in regard to the administration and better enjoyment of the common property."

The community is not an inert mass of property. It is something active in nature. The community property requires administration, and its conservation and development often calls for considerable expenditures which may be met by incurring debts under the primary responsibility of the community.

At the same time the co-owners continue to hold title to their respective shares and can therefore sell and encumber them.

In the instant case, the share of the common owner, José J. Benítez, became subjected, by the attachment, to the satisfaction of his personal obligation to Carle Dubois. *But*, says the statute itself, *the effect of the alienation or mortgage in relation to the part-owners shall be limited to the share which may be allotted to them in the division upon the termination of the common ownership.* And it must necessarily be limited not only with regard to the co-owners but also with reference to their creditors.

As Manresa states in his Commentaries, with the penetration and clarity which characterize his views:

"It is well to remember, likewise, that debts may, as to their nature, admit of three sources of origin: 1st, that they were incurred during the community by one of the co-owners in a separate manner and for his special benefit; 2d, that they were contracted for the community while still undivided; and 3d, that the debt should have been contracted collectively, without specification of shares and without any agreement of solidarity between the co-owners. Under the first supposition, since the co-owner, in the exercise of his property rights, privately contracted the debt, such portion of the community shall be subject to the debt as may be adjudicated on division of said community; neither in the second case will the other co-owners be responsible except under an action to refund the one who should have paid for the others; and in the third instance, all the participants shall be responsible to the creditor in proportion to their respective shares." Manresa, *Comentarios al Código Civil*, vol. 3, p. 529.

Having arrived at these conclusions, it is clear that we do not believe the errors assigned by appellant in his brief ever existed.

Therefore, the judgment appealed from should be affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.